UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY M. SMITH,<br><br>            Plaintiff,<br><br>      v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | Case No. EDCV 05-0718 JTL<br><br>MEMORANDUM OPINION AND ORDER |

**PROCEEDINGS**

On August 9, 2005, Wendy M. Smith ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for disability insurance benefits. On August 19, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on February 6, 2006, defendant filed an Answer to Complaint. On May 22, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On September 17, 2003, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 232-233). In her application, plaintiff claimed that her disability commenced on June 10, 2000. (AR at 232). She claimed that she was unable to work because of a learning disability, depression, and anxiety. (AR at 232, 235-38). On January 9, 2004, the Commissioner denied plaintiff's application for benefits. (AR at 235-38). On March 16, 2004, plaintiff filed a request for reconsideration. (AR at 53-54). On April 23, 2004, the Commissioner denied plaintiff's request for reconsideration. (AR at 55-59, 240-44). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 60-61). On February 3, 2005, the ALJ conducted a hearing in San Bernardino, California. (AR at 22-46). Plaintiff appeared at the hearing with counsel and testified. (Id.).

On March 30, 2005, the ALJ issued his decision denying benefits. (AR at 13-20). In his decision, the ALJ concluded that plaintiff suffered from the following severe impairments: depression, anxiety, and diabetes mellitus. (AR at 14). The ALJ determined, however, that none of these impairments, either individually or in combination, met or equaled any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 14-15). The ALJ then found that plaintiff was capable of performing a wide range of work at all exertional levels with the following limitations: cannot work at unprotected heights or around dangerous machinery; must avoid exposure to temperature extremes; should work in an environment that does not require response to repeated requests for information; should work in an office environment with a small group

of co-workers or by herself; should not be around noise or stimulation; and must be able to take her time and address one question at a time. (AR at 15). Ultimately, the ALJ found that plaintiff was not entitled to disability insurance benefits under the Social Security Act. (AR at 19, 20).

On April 26, 2005, plaintiff filed a timely request for review of the ALJ's decision with the Appeals Council. (AR at 8). Thereafter, the Appeals Council affirmed the ALJ's decision. (AR at 5-7).

**PLAINTIFF'S CONTENTIONS**

1. The ALJ failed to appropriately consider the opinion of plaintiff's treating psychiatrist.

2. The ALJ failed to appropriately apply SSR 00-3p in evaluating the severity of plaintiff's obesity.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla," but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and

consider adverse as well as supporting evidence. <u>Green v. Heckler</u>, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. <u>Id.</u> at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment that significantly limits his physical or mental ability to do basic work activities. <u>Id.</u> at 140-41. Step three requires the consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. <u>Id.</u> at 141. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. <u>Id.</u> at 141. If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. <u>Id.</u> If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education, and work experience. <u>Id.</u> at 142. The claimant is entitled

to disability benefits only if he is not able to perform such work. Bowen, 482 U.S. at 142.

## B. The ALJ Properly Considered the Opinion of Plaintiff's Treating Psychiatrist

Plaintiff contends that the ALJ improperly rejected the opinion of Geetha Paladugu, M.D., plaintiff's treating psychiatrist. This error, according to plaintiff, requires the Court to remand the case to allow the ALJ to properly consider Dr. Paladugu's opinion.

An ALJ should place greater weight on a treating physician's opinion than that of an examining physician. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)("It is clear that more weight is given to a treating physician's opinion than to the opinion of a non-treating physician because a treating physician 'is employed to cure and has a greater opportunity to know and observe the patient as an individual.'")(quoting Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); see also Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Andrews, 53 F.2d at 1041. The proper weight that the ALJ should place on a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record. See 20 C.F.R. §§ 404.1527, 416.927.

Moreover, an ALJ may disregard a treating physician's opinion whether or not other medical evidence contradicts that opinion. See Andrews, 53 F.3d at 1041. Before rejecting a treating physician's uncontroverted opinion, however, the ALJ must present clear and

5

convincing reasons for doing so. See Andrews, 53 F.3d at 1041; see also Montijo v. Secretary of Health and Human Services, 729 F.2d 599, 601 (9th Cir. 1984). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Saelee v. Chater, 94 F.3d 520 (9th Cir. 1996). "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041.

An ALJ can satisfy the burden of providing specific and legitimate reasons for rejecting the opinion of a treating physician "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)(internal quotations and citations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)(same); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999).

Here, the ALJ met this burden of providing specific and legitimate reasons for disregarding the opinion of Dr. Paladugu. In his decision, the ALJ accurately cited and summarized the facts and conflicting medical evidence in the record in support of his decision to reject Dr. Paladugu's opinion.

First, the ALJ summarized the findings of Linda M. Smith, M.D. Those findings, unlike Dr. Paladugu's findings, showed there was no

1  evidence to indicate that plaintiff had any impairment in her ability
2  to perform work-related activities:

3           On December 11, 2003 the claimant was given a
4           complete psychiatric evaluation . . . [t]he
5           claimant told Dr. Smith that she had depression
6           and anxiety problems as well as problems with
7           concentration and her memory. Dr. Smith,
8           however, did not notice any problems with
9           attention and concentration during the interview
10          . . . claimant was able to volunteer information
11          spontaneously, exhibited no psychomotor agitation
12          or retardation . . . she was alert and oriented
13          in all spheres and appeared to be of at least
14          average intelligence . . . [h]er concentration
15          was satisfactory and she was able to follow the
16          conversation well. Dr. Smith concluded the
17          claimant had a mild mood disorder not otherwise
18          specified and a GAF of 70, indicating a fairly
19          high level of functioning. Dr. Smith further
20          concluded that there was no evidence to indicate
21          that the claimant had any impairment in her
22          ability to perform work-related activities.

23 (AR at 15-16; see AR at 167-73).

24      After discussing these findings, the ALJ summarized Dr.
25 Paladugu's findings in the Work Capacity Evaluation form dated May 10,
26 2004, as follows:

27          This form consists of check boxes and indicates
28          that claimant is markedly limited in many areas

7

> of functioning, including her ability to maintain her attention and concentration for extended periods, her ability to sustain an ordinary routine, her ability to work in coordination or proximity to others, her ability to make simple work-related decisions, her ability to interact appropriately with the general public, and her ability to respond appropriately to changes in a work setting.

(AR at 16). The ALJ then observed that the treating notes from Inland Psychiatric Medical Group, where Dr. Paladugu works, did not corroborate the extreme limitations to which Dr. Paladugu limited plaintiff. (Id.). Nevertheless, the ALJ stated that, to the extent the limitations noted by Dr. Paladugu were credible, they were incorporated into his assessment of plaintiff's functional abilities. (Id.). Plaintiff argues that the ALJ never explained how the treating notes failed to corroborate the extreme limitations in Dr. Paladugu's assessment. (Joint Stipulation at 3). This argument has no merit. The ALJ, in fact, discussed and summarized the medical records submitted by Inland Psychiatric Medical Group and the assessment that Dr. Paladugu made in the Work Capacity Evaluation. The ALJ summarized the records from Inland Psychiatric Medical Group as follows:

> I also note that claimant has been seen periodically at Inland Psychiatric Medical Group . . . on August 15, 2003 the claimant complained of depression, crying spells, and sleep problems. She was diagnosed with major depressive disorder, recurrent, moderate. Subsequent treatment notes

8

show that the claimant was depressed because she did not have a job. In March 2004, however, the claimant reported that she was enrolled in school to become trained as a medical assistant. She was noted to be calm and cooperative, with okay mood and appetite and only some difficulties with energy, concentration, motivation and anxiety.

(AR at 16). The ALJ then noted Dr. Paladugu's opinion and correctly observed that the records did not corroborate the extreme limitations noted in Dr. Paladugu's opinion.[1] This Court finds that the ALJ sufficiently explained his findings and did not err.

Plaintiff also argues that the ALJ failed to explain which limitations were credible and how they were incorporated into his assessment of plaintiff's functional abilities. In fact, the ALJ incorporated many of the limitations cited in Dr. Paladugu's Work Capacity Evaluation in his assessment of plaintiff's functional capacity.[2] For example, the residual functional capacity assessment included the limitation that plaintiff should work in an office environment with a small group of co-workers or by herself, which corresponds with Dr. Paladugu's opinion that plaintiff's ability to

---

[1] Plaintiff does not contest the accuracy of the ALJ's summary of the Inland Psychiatric Medical Group records or Dr. Paladugu's Work Capacity Evaluation dated May 10, 2004. (Joint Stipulation at 2).

[2] "I find the claimant capable of performing a wide range of work at all exertional levels with the following limitations: cannot work at unprotected heights or around dangerous machinery; must avoid exposure to temperature extremes; should work in an environment that does not require response to repeated requests for information; should work in an office environment with a small group of co-workers or by herself; should not be around noise or stimulation; and must be able to take her time and address one question at a time." (AR at 15).

9

work in coordination or proximity to others was markedly limited. Another limitation included in the ALJ's functional capacity assessment is that plaintiff should not be around noise or stimulation and must be able to take her time and address one question at a time, which corresponds with Dr. Paladugu's opinion that plaintiff's ability to maintain her attention and concentration for extended periods was markedly limited. Finally, the ALJ also included the limitation that plaintiff should work in an environment that does not require a response to repeated requests for information, which corresponds with Dr. Paladugu's opinion that plaintiff's ability to interact appropriately with the general public was markedly limited. Although the ALJ did not endorse the same degree of limitations as Dr. Paladugu expressed in his opinion, the ALJ nonetheless incorporated the limitations in his decision.

The ALJ also discussed the findings of Reynaldo Abejuela, M.D., an examining physician, who conducted a complete psychiatric evaluation of plaintiff on February 10, 2005. These findings, unlike Dr. Paladugu's findings, also showed that there was no evidence to indicate that plaintiff had any impairment in her ability to perform work-related activities:

> After interviewing the claimant and performing a mental status examination, Dr. Abejuela concluded that the claimant had a mild mood disorder not otherwise specified. From a functional standpoint, Dr. Abejuela concluded that the claimant could follow simple and complex instructions. He stated that there were no mental restrictions in the claimant's daily

10

>activities and that her concentration, persistence and pace were only slightly impaired . . . [h]e further stated the claimant's ability to understand, carry out and remember complex instructions was only mildly impaired, that her ability to respond to co-workers, supervisors and the general public was only slightly impaired, that her ability to respond appropriately to usual work situations was only slightly impaired, that her ability to deal with changes in a routine work setting was only slightly impaired, and that her overall psychiatric limitations ranged from none to mild.

(AR at 17; see AR at 217-23). After summarizing the findings of the three physicians, the ALJ noted that Dr. Paladugu's opinion was inconsistent with the opinions of Dr. Smith and Dr. Abejuela. (AR at 18). Ultimately, the ALJ resolved this conflict in favor of the opinions submitted by Dr. Smith and Dr. Abejuela.

The ALJ acted well within his discretion by relying on the opinions of Dr. Smith and Dr. Abejuela and rejecting Dr. Paladugu's opinion. An ALJ may reject a treating physician's opinion that conflicts with an examining physician's opinion if the examining physician bases his opinion on independent clinical findings. Andrews, 53 F.3d at 1041 ("[W]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion may itself be substantial evidence; it is then solely the province of the ALJ to resolve the

conflict."). Here, Dr. Smith and Dr. Abejuela based their opinions on their own independent clinical findings and examinations. Dr. Smith performed a mental status examination that included findings regarding plaintiff's appearance, attitude, and behavior; thought process; thought content; mood and affect; speech; intellectual functioning; memory; fund of knowledge; concentration and calculation; abstractions; and insight and judgment, concluding that plaintiff's prognosis was fair. (AR at 167-73). Dr. Abejuela performed a mental status examination that included findings on plaintiff's general appearance and behavior; thought content; affective status; reality contact; attention; orientation; memory; reasoning skills; judgment; calculation; and goals, concluding that plaintiff's prognosis was fair to good. (AR at 217-23). Because these opinions conflicted with Dr. Paladugu's opinion, the ALJ acted within his discretion in resolving the conflict. By adopting the opinions of Dr. Smith and Dr. Abejuela, the ALJ committed no error. See Andrews, 53 F.3d at 1041.

**C.  The ALJ Appropriately Applied SSR 00-3p in Evaluating the Severity of Plaintiff's Obesity**

Plaintiff contends that the ALJ neglected to consider plaintiff's obesity in determining whether her combined impairments met or equaled a listed impairment and in assessing plaintiff's residual functional capacity. As discussed below, plaintiff's contention lacks merit.

Social Security Regulation ("SSR") 02-01p classifies obesity as a medically determinable impairment. SSR 02-01p also reminds adjudicators to consider the effects of a claimant's obesity when evaluating disability. SSR 02-01p. In particular, it cautions adjudicators that "the combined effects of obesity with other

12

impairments can be greater than the effects of each of the impairments considered separately." Id. SSR 02-01p also instructs ALJs to consider a claimant's obesity at each relevant step of the sequential evaluation process. Id. (advising adjudicators "to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity").

Here, the ALJ did not find that plaintiff's "morbid obesity" constituted a severe impairment. But the ALJ also did not address the issue of plaintiff's obesity in his finding that plaintiff's impairments failed to meet or equal a listed impairment.

Where the medical evidence establishes a claimant's obesity, the ALJ should evaluate that evidence in combination with the claimant's other impairments to determine whether the claimant meets or equals a listed impairment. SSR 02-01p ("We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment."). An ALJ's failure to do so may require reversal. See Kokal v. Massanari, 163 F. Supp. 2d 1122, 1134 (N.D. Cal. 2001) (finding that ALJ committed reversible error in failing to consider plaintiff's obesity at each stage of sequential evaluation process where plaintiff's medical records showed that she stood five feet tall and weighed 261-264 pounds, had history of pain and limitation of motion in her spine and finding of degenerative disc disease); see also Cornett v. Massanari, 2001 WL 34043762, *8 (D. Or. June 22, 2001) (applying predecessor to SSR 02-01p and finding remand necessary "so that the ALJ can evaluate the effects of obesity, in combination with

Cornett's other serious limitations"); James v. Apfel, 174 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2001) (reversing ALJ's disability findings because ALJ failed to consider plaintiff's diagnosed obesity in determining whether plaintiff met or equaled listed impairment).

Generally, however, an ALJ's failure to compare the combined effects of impairments to a listed impairment is harmless, unless the claimant offers a plausible theory of how the combined impairments might equal a listed impairment. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (holding that, where claimant "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment," ALJ commits no error by failing to discuss combined effects of impairments).  In this case, plaintiff offers no plausible arguments that her obesity, combined with her learning disability, depression, diabetes, hyperthyroidism, and problems with her left knee met or equaled a listed impairment.[3]  Accordingly, the ALJ did not err in failing to address the combined effects of plaintiff's impairments with her obesity.

The ALJ also neglected to address plaintiff's obesity in assessing plaintiff's residual functional capacity.  But the record shows that the ALJ's failure to do so is harmless. First, plaintiff's testimony at the hearing is inconsistent with her claim that her alleged morbid obesity is an impairment that would prevent her from working.  The ALJ asked plaintiff " . . . do you have any physical,

---

[3] Plaintiff merely argues that her height and weight were listed as 5'6" and 185 pounds respectively, and that she was considered morbidly obese by her treating sources at Beaver Medical Group.  (Joint Stipulation at 7). Plaintiff "offered no theory, plausible or otherwise, as to how [her] [impairments] combined to equal a listed impairment . . . ." Lewis, 236 F.3d at 514.

14

besides your diabetes, . . . problems that would prevent you from working?" to which plaintiff responded "No." (AR at 32). The ALJ later revisited this issue:

> ALJ: I, I'm confused because you're applying for disability which is granted to people who are unable to work and you've described yourself as someone who has no physical problems that would prevent you from working . . . [S]o I'm having a difficult problem seeing where you would qualify for disability.

(AR at 33). Plaintiff's attorney never directly responded to this query and instead proposed that plaintiff's mother testify. (AR at 34). Plaintiff's mother, however, never resolved the discrepancy between plaintiff's testimony and her claim of physical disability.

The medical evidence in the record also contradicts plaintiff's claim that her alleged morbid obesity is an impairment that would prevent her from working. Plaintiff argues that the medical records from Beaver Medical Group are sufficient proof that she suffers from morbid obesity.[4] (Joint Stipulation at 7). However, plaintiff sought treatment at Beaver Medical Group for "a question regarding . . . diabetic medicine," not for obesity. (AR at 151). Additionally, while there are seventeen pages of progress notes and laboratory tests in the record from Beaver Medical Group spanning from April 10, 2001 to September 12, 2002, only one progress note briefly mentions plaintiff's morbid obesity and cites no clinical findings or medical evidence which could support this conclusion. In short, there is

---

[4] A progress note, dated September 6, 2001, states, "The patient is a 27-year-old morbidly obese female . . . ." (AR at 151).

nothing in the record that supports the proposition that plaintiff was diagnosed with morbid obesity.

In contrast, the internal medicine consultation performed by Jamshid Tamiry, M.D., "pertain[ed] to the history, physical examination and review of laboratory and radiographic data . . . ." (AR at 179). In the physical examination section of his evaluation, Dr. Tamiry found that plaintiff "is a well developed, <u>slightly obese</u> female in no acute distress." (AR at 176) (<u>emphasis added</u>). Dr. Tamiry concluded that, "from an internal medicine standpoint, the patient has no functional limitations." (AR at 179). This opinion is consistent with plaintiff's testimony at the hearing and is not contradicted by any medical evidence submitted by plaintiff. In fact, plaintiff has produced no medical or clinical evidence which supports the conclusion that her "morbid obesity" is an impairment, taken alone or in combination with her other impairments, that would prevent her from working.

Generally, in cases involving obesity, an ALJ need not order a consultative examination to develop evidence about obesity. SSR 02-01p. The ALJ should, however, obtain additional information from the claimant's treating sources if the information is necessary to reach an informed decision. <u>See</u> SSR 02-01p. Here, the ALJ ordered consultative examinations to develop evidence about plaintiff's claimed physical and mental impairments (including obesity). Because the consultative examinations were conducted properly and Dr. Tamiry's findings were consistent with plaintiff's testimony at the hearing, no other information was necessary for the ALJ to reach an informed decision. Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity

16

1  that the ALJ failed to consider. Therefore, based on the record, the
2  ALJ adequately considered plaintiff's obesity in his residual
3  functional capacity assessment. See Burch v. Barnhart, 400 F.3d 676
4  (9th Cir. 2005), amended, No. 03-15986, 2005 U.S. App. LEXIS 1025
5  (2005).

**ORDER**

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the proper legal standards.  The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July 19, 2006

```
                              /s/
                    JENNIFER T. LUM
                    UNITED STATES MAGISTRATE JUDGE
```